**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOHN DOE,**<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>**NEW JERSEY STATE PRISON,** *et al.*,<br><br>　　　　　　　　　Defendants. | Civil Action No. 24-8290 (ZNQ) (JTQ)<br><br>**OPINION** |

**QURAISHI, District Judge**

Before the Court is *pro se* plaintiff John Doe's ("Plaintiff") civil rights complaint, filed pursuant to 42 U.S.C. § 1983. ("Complaint") (ECF No. 1). Plaintiff has submitted a completed *in forma pauperis* application, including a certified account statement of his prison funds. (ECF No. 1-3). Accordingly, this Court now screens the complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B). For the reasons stated below, the Court will permit the claims asserting failure to protect, inadequate medical care, and retaliation to proceed at this time. The remaining claims will be dismissed for failure to state a claim for which relief may be granted under § 1983.

Also, before the Court is what Plaintiff styles as a Motion for a Stay. (ECF No. 8). Based on the nature of the relief Plaintiff is seeking—prevention of his transfer to a prison outside of New Jersey—this Court liberally construes this as a Motion for a Temporary Restraining Order. (*See* ECF No. 8). For the reasons stated below, this Court will deny Plaintiff's motion.

## I. THE COMPLAINT

### A. Defendants

In August of 2024, Plaintiff, an inmate at New Jersey State Prison ("NJSP"), filed this Complaint. (ECF No. 1).[1] In his Complaint, Plaintiff seeks to sue a long list of Defendants. First, Plaintiff is suing NJSP and the New Jersey Department of Corrections ("NJDOC"). Plaintiff also sues Bruce Davis, NJSP's Administrator, who, according to Plaintiff, is responsible for the overall operation and policies at NJSP. Additionally, Plaintiff is suing Victoria Kuhn, the Commissioner of the New Jersey Department of Corrections, whom Plaintiff attempts to hold accountable for the "systemic failures and constitutional violations throughout the prison system."

In the prison's cookhouse, Plaintiff is suing Supervisor Howard, who was directly involved in his job assignments and is alleged to have witnessed inmate misconduct, as well as Supervisor Mingo. Several Institutional Trade Instructors ("ITIs")—specifically Wright, Martinez, Camron, and Starcher—are also named as Defendants, because they allegedly failed to intervene in thefts, bullying, and threats within the cookhouse. Additionally, cookhouse corrections officers Morrow, Kelley, and Rubino are named as defendants for their roles in maintaining (or failing to maintain) safety and discipline in the kitchen area.

Turning to prison custody and security staff, Plaintiff is suing Lieutenant Crawford, the West Compound Custody Supervisor, and Major Sears, a Security Major, both of whom had supervisory authority over the compound and housing units. He further identifies numerous unnamed John and Jane Doe custody officers and supervisors responsible for his housing in Unit 6-Left and later in the protective custody unit.

---

[1] This Court previously granted Plaintiff's motion seeking leave to proceed by pseudonym John Doe. (ECF No. 5).

Plaintiff also sues personnel from the Special Investigations Division (SID). Specifically, Ms. DePalo, an SID investigator who allegedly recruited Plaintiff to cooperate with an investigation, is named as a defendant because she failed to ensure Plaintiff's safety. Another investigator, Mr. Goodwin, is also named, along with additional John and Jane Doe SID investigators.

Regarding medical care, Plaintiff is suing Dr. Nwachukwu, the prison infirmary physician, who allegedly denied him critical care. Additional medical defendants include Dr. Haggad from the prison clinic, and Nurses Amazon and Bass, who were involved in treating —or allegedly neglecting to treat — Plaintiff's injuries. The medical personnel are affiliated with University Correctional Health Care ("UCHC") Rutgers, which is named as an institutional defendant responsible for inmate medical services. Also named are Dr. Samuel Lopez, an oral surgeon, and Dr. Diaz, both of whom allegedly failed to provide adequate dental or follow-up care to Plaintiff.

Several custody officers in specific housing units are also named, such as Officer Cupo in Unit 3EE, and Sgt. Orlo, who supervised Unit 3DD. Plaintiff also names Supervisor Mendosa, who oversaw the property office, and Sgt. Stives, who, along with Officer Tallar, allegedly contributed to retaliatory treatment and public labeling of Plaintiff as a "snitch." Officer Tucker is named for his role in belatedly returning part of Plaintiff's personal property. Plaintiff is also suing Officer Nieves, who escorted him to medical appointments but allegedly obstructed care and disclosed confidential information about Plaintiff's role as a cooperating witness.

Finally, Plaintiff is suing numerous John and Jane Does, ranging from corrections officers, medical staff, supervisors, and investigators, who allegedly were involved in acts or omissions contributing to Plaintiff's injuries, retaliation, or mistreatment.

Plaintiff is suing these individuals and entities in both their official and individual capacities. Plaintiff seeks compensatory, punitive, and injunctive relief for the Defendants' roles in the alleged constitutional and statutory violations.

**B. Alleged Incidents**

Plaintiff was assigned to work in the NJSP prison cookhouse beginning in June 2021. (ECF No. 1, at page 4). From the outset, Plaintiff observed a deeply dysfunctional and hazardous environment. (*Id*.). The cookhouse, according to Plaintiff, was filled with unsanitary conditions, such as roach and rat infestations, and lacked any formal safety or hygiene training. (*Id*. at 5). Inmates frequently stole food and other materials to smuggle as contraband throughout the prison. (*Id*.). Plaintiff alleges that Black Muslim inmates in the cookhouse received special privileges, including time off to pray, and used that time to facilitate theft and trafficking. (*Id*.). These inmates allegedly harassed those who did not share in their race or religion, creating, what Plaintiff claims is a hostile and discriminatory work environment. (*Id*.).

As a new worker, Plaintiff was paired with a notorious inmate known for bullying others. (*Id*.). Plaintiff's complaints about this inmate's conduct were ignored. (*Id*.). In a later assignment, Plaintiff was partnered with another inmate who openly stole large quantities of food to sell in other housing units. (*Id*.). Again, supervisors took no action until this inmate was finally caught and dismissed. (*Id*.). Plaintiff continued working in these conditions, fearing retaliation or job loss if he complained. (*Id*.).

In the broader prison environment, Plaintiff witnessed sexual harassment by another cookhouse worker, including misconduct in Unit 6-Left, where the inmate population consisted largely of gang-affiliated individuals. (*Id*. at 6). Plaintiff insists that, although federal law mandates the posting of PREA (Prison Rape Elimination Act) notices, none were displayed in the cookhouse or Unit 6-Left. (*Id*.).

On July 23, 2022, Plaintiff alleges that he was physically assaulted by two inmates in the cookhouse freezer.[2] (*Id*. at 6). He believed the attack was motivated by suspicions that he was cooperating with prison authorities. (*Id*.). He suffered injuries to his head, nose, and leg. (*Id*.). He was treated in the infirmary and then interviewed by Ms. DePalo, an investigator with the prison's Special Investigations Division (SID). (*Id*. at 7). Ms. DePalo asked for Plaintiff's cooperation and assured him of protection. (*Id*.). However, two days later, Plaintiff was sent back to the same unit and work assignment despite ongoing threats. (*Id*.). He contacted SID again to express concerns for his safety and requested immediate protective custody. (*Id*.). Ms. DePalo allegedly told him she could not help until the following Monday. (*Id*.).

On July 31, 2022—four days after the first attack— Plaintiff was assaulted again. Upon returning from his cookhouse shift, he was "sucker-punched" by two inmates in Unit 6-Left, knocked unconscious, and left bleeding on the floor. (*Id*.). A medical emergency was declared, and he was transported to the prison infirmary and then to a hospital, where he received treatment for multiple lacerations and trauma. (*Id*.). Afterward, he returned to the prison infirmary. (*Id*. at 8). Plaintiff describes his nine-day infirmary stay as torturous and painful. He was denied a neck brace, which caused him to pass out at night, adequate pain medication, and even clean clothing or bedding. (*Id*.). He was forced to sleep in bloodied garments and on bloodied sheets. (*Id*.). He claims he was not allowed to contact his family and that infirmary staff, including Dr. Nwachukwu, delayed necessary medical evaluations. (*Id*.). Nurses discussed his injuries openly in front of other inmates, violating his right to medical privacy. (*Id*.).

---

[2] The Court notes that Plaintiff's complaint identifies the date of this assault as August 23, 2022. Nonetheless, Plaintiff also alleges that he reported this assault on July 24, 2022. The Court realizes that the assault could not have happened in August based upon this timeline, and that Plaintiff may have miswritten the date of the alleged assault. (*See* ECF No. 1, at page 6-7). The confusion with respect to dates does not affect the Court's current decision.

Plaintiff alleged that he was further threatened in the infirmary. (*Id.*). One of the inmates involved in assaulting Plaintiff was housed in the cell next to him in the infirmary. (*Id.* at 9). That inmate and others referred to Plaintiff as a "snitch," screamed gang threats towards Plaintiff, and were given commissary food and privileges by prison staff, who facilitated their harassment. (*Id.*).

Eventually Plaintiff was transferred to Protective Custody (Unit 3EE), where he claims he was met with further mistreatment. (*Id.*). It took a month for him to receive his property, during which time he had no hygiene products, change of clothes, or clean bedding. (*Id.*). He alleges that officers made derogatory comments suggesting he was a confidential informant, which further endangered him. (*Id.*). Officer Tallar refused to enter Plaintiff's cell, claiming Plaintiff might file a PREA complaint, and Officer Nieves allegedly disclosed Plaintiff's cooperation with SID to gang-affiliated inmates. (*Id.*).

Plaintiff also recounts attempts to report sexual harassment by other inmates, which he claims were mishandled or ignored. (*Id.* at 8-9). He further alleges that Sgt. Smith filed a PREA complaint in his name without his consent while he was medicated and recovering from injuries. (*Id.*). This report triggered additional retaliation and stigma. (*Id.*).

Throughout this period, Plaintiff submitted multiple medical grievances and inquiries seeking care for persistent injuries to his neck, jaw, and back. (*Id.* at 9-10). He also contacted the NJDOC Ombudsman on several occasions but received limited assistance. (*Id.*). Despite his efforts, Plaintiff claims that he remains in a protective custody unit where he is still housed near inmates he reported, causing him to face retaliation. (*Id.*).

6

## II.  STANDARD OF REVIEW

### A.  Screening Standard

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, a plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "Determining whether the allegations in a complaint are plausible is a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### B.  Section 1983 Claims

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

Thus, to state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted).

## III. DISCUSSION

### A. Failure to Protect

Under the Eighth Amendment, prison officials have a duty to protect inmates from violence at the hands of other prisoners. A successful claim under this theory must show that the plaintiff was incarcerated under conditions posing a substantial risk of serious harm, and that the prison officials were deliberately indifferent to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference means the official must actually know of and disregard an excessive risk to inmate health or safety. (*Id.*).

Here, Plaintiff alleges that he was targeted for violence after being identified as a confidential informant by SID investigator Ms. DePalo, and other prison staff. (ECF No. 1, at page 6-7). Despite his cooperation with SID, and his repeated notifications that he faced imminent danger, he was returned to the same housing unit and work assignment (Unit 6-Left and the Cookhouse). (*Id.*). He was twice physically assaulted—first in the cookhouse freezer, and later in Unit 6-Left—where he was knocked unconscious and seriously injured. (*Id.*). Prison officials and SID investigators were made aware of the assaults and the threats he received, but did not act promptly to protect him. (*Id.*). Indeed, his second assault occurred four days after SID refused to move him into protective custody despite his plea for immediate safety. (*Id.*).

These facts, at this stage of the proceedings, plausibly plead a substantial risk of serious harm and actual knowledge by prison officials and investigators who had ample opportunity to intervene but failed to do so. As in *Farmer*, the officials' inaction in the face of clear danger supports, at this juncture, an Eighth Amendment claim. Accordingly, this claim will be allowed to proceed at this time against defendants Sergeants Orlo and Stives, as well as Officers Morrow, Kelly, Cupo, Tallar, and Rubino.

### B. Deliberate Indifference to Serious Medical Needs

Under *Estelle v. Gamble*, 429 U.S. 97 (1976), and its progeny, a prison official violates the Eighth Amendment if they know of and disregard an objectively serious medical need and act with deliberate indifference, meaning they consciously disregarded a risk of harm. This standard applies not only to outright denial of care, but also to delays in treatment, provision of grossly inadequate care, and failure to follow up on known medical issues.

Here, Plaintiff alleges that he suffered multiple head lacerations, swelling, and neck and back injuries after the July assault. (ECF No. 1, at page 6). According to Plaintiff, Dr. Nwachukwu denied him a neck brace, refused follow-up care, and ultimately minimized his injuries as "bruises" despite medical records from a trauma unit. (ECF No. 1, at page 7). Plaintiff claims that he lacked access to pain relief for over nine days in the infirmary. (*Id.*). Nurses Amazon and Bass allegedly ignored his condition. Follow-up medical and dental requests in the months after the injury were met with delay or non-response. (*Id.*). Requests for privacy during medical interviews were ignored, contributing to harassment by other inmates. (*Id.*).

These facts adequately allege repeated conscious disregard of medical needs and denial of minimally adequate care, in violation of *Estelle* and *Monmouth County v. Lanzaro*, 834 F.2d 326 (3d Cir. 1987). The failure to act on serious injuries over an extended period, at this juncture, warrants permitting the claim of deliberate indifference to proceed against Doctors Nwachukwu, Haggad, Lopez, and Diaz, as well as Nurses Amazon and Bass.

### C. Retaliation

Retaliation for the exercise of First Amendment rights, such as filing grievances or cooperating with investigations, may be actionable under § 1983. To prevail, a plaintiff must show that he engaged in constitutionally protected conduct; that he suffered adverse action sufficient to

deter a person of ordinary firmness; and that the protected conduct was a substantial or motivating factor behind the adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

Here, Plaintiff alleges that he cooperated with SID investigators in a drug smuggling investigation and reported dangerous conditions and inmate misconduct. (ECF No. 1, at page 6-7). Immediately following this cooperation, he was returned to general population and work assignments despite known threats. (*Id.*) Staff identified him publicly as a "snitch" or "SID informant," which, according to Plaintiff, was a serious label in prison culture that exposed him to attack and stigma. (*Id.*) He faced threats and harassment from inmates and staff, was denied medical appointments, and suffered delays in property delivery and medical care. A false PREA complaint was allegedly filed in his name without consent, and staff refused to enter his cell, citing the risk of fabricated PREA claims. (*Id.* at 9).

These events meet the *Rauser* test, as Plaintiff engaged in protected activity by reporting misconduct and cooperating with internal investigations. The retaliatory actions—housing decisions, stigmatizing comments, interference with care— may, at this point, constitute adverse action. The close temporal connection and pattern of targeted mistreatment support a strong inference of causal connection. Accordingly, the Court will allow this claim to proceed at this time against Lieutenant Crawford, Major Sears, Ms. DePalo, Mr. Goodwin, and the John and Jane Doe officers in the SID Unit and the ones responsible for housing in unit 6-Left.

**D. Claims Dismissed with Prejudice**

Several of Plaintiff's remaining claims plainly do not plead a viable cause of action under § 1983. First, the claim under the Prison Rape Elimination Act ("PREA") that Plaintiff attempts to assert does not provide a private right of action. *See Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017) (Plaintiffs "may not attempt to enforce [PREA] statutes or policies that do not

11

themselves create a private right of action by bootstrapping such standards into a constitutional deliberate indifference claim."). Accordingly, the Court dismisses *with prejudice* Plaintiff's PREA claims.

Likewise, Plaintiff's Occupational Safety and Health Administration ("OSHA") claims must be dismissed because "it is well-settled that OSHA does not create a private right of action." *Naderi v. Concentra Health Servs., Inc.*, No. 21-18958, 2024 WL 2954181, at *5 (D.N.J. June 12, 2024) (quoting *Ries v. Nat'l R.R. Passenger Corp.*, 960 F.2d 1156, 1164–65 (3d Cir. 1992); *Dravo Corp. v. Occupational Safety & Health Rev. Comm'n*, 613 F.2d 1227, 1230 n.2 (3d Cir. 1980); *Kozar v. AT&T*, 923 F. Supp. 67, 69 (D.N.J. 1996)). Accordingly, the Court will dismiss *with prejudice* Plaintiff's OSHA claims.

Next, Plaintiff's claim regarding his lost property must also be dismissed with prejudice. His claim regarding his property loss is not cognizable under § 1983 because New Jersey provides adequate post-deprivation remedies. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("even an intentional destruction of property by a state employee does not violate due process if the state provides a meaningful post-deprivation remedy."). Accordingly, defendants Supervisor Mendoza and Officer Tucker—whom Plaintiff allege are responsible for the alleged lost property—will be dismissed with prejudice.

Last, Plaintiff's claim for monetary damages against the state actors acting in their official capacity must be dismissed with prejudice because the Eleventh Amendment immunity bars such claims. The Eleventh Amendment incorporates a general principle of sovereign immunity which bars citizens from bringing suits for damages against any state in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–101 (1984). In general, Eleventh Amendment immunity extends to state agencies and state officials in their official capacities, and, in doubtful

cases, the Court analyzes several factors to determine whether an entity is an agency of the State, i.e., whether the State is the real party in interest. *See Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659-60 (3d Cir. 1989).

A state and its departments are not considered "persons" amenable to suit under section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 67-70 (1989). Also barred are section 1983 suits for damages against "governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes," which are "no different from a suit against the State itself." *Id.* at 70-71. State officials, sued in their official capacities, are likewise not "persons" subject to a damages suit under section 1983. *Will*, 491 U.S. at 71 n.10; *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). On the other hand, a state official sued in his or her personal capacity is a "person" amenable to suit under section 1983 and does not enjoy Eleventh Amendment protection. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

Accordingly, Plaintiff's claims against the NJSP and NJDOC must be dismissed pursuant to the Eleventh Amendment. Likewise, Plaintiff's claims against Bruce Davos and Victoria Kuhn in their official capacities must also be dismissed.[3]

### E. Claims Dismissed without Prejudice

Next, the Complaint contains a list of conclusory "1983 Complaints," in which Plaintiff fails to plead any allegation against a specific Defendant. Rather, Plaintiff provides the Court with

---

[3] Plaintiff notes that he is suing Bruce Davis and Victoria Kuhn in their individual capacities as well. However, Plaintiff fails to state a claim for which relief may be granted, as he does not show how these defendants have any personal involvement in the alleged wrongdoing. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, Plaintiff mentions these defendants in a conclusory fashion. As such, they will be dismissed without prejudice at this time. Plaintiff can amend his complaint to attempt to plead how these defendants had personal involvement with the alleged constitutional violations.

13

a list of "complaints" without reference to a single Defendant. This group pleading is prohibited. *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297 at *2 (D.N.J. June 29, 2015) (citing *Aruanno v. Main*, 467 F. App'x 134, 137–38 (3d Cir. 2012) (dismissing a § 1983 action was appropriate where Defendants were collectively sued as "[government] personnel" and failed to allege the personal involvement of the individual Defendants)). Indeed, a plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." (*Id.*) When a number of defendants are named in a complaint, plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "which defendants engaged in what wrongful conduct." *Falat v. County of Hunterdon*, 2013 WL 1163751 at *3 (D.N.J. Mar. 19, 2013).

The conclusory allegations regarding Plaintiff's work environment in the cookhouse, the health and safety of the cookhouse, and the supposed bias that Plaintiff express in the Complaint, are not facts nor are they sufficient to state a claim against each Defendant. Plaintiff fails to connect Defendants to the alleged wrongdoing in a manner sufficient to put them on notice of what each is alleged to have done. Federal notice and pleading rules require the amended complaint to provide Defendants "fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (alteration in original) (quoting *Twombly*, 550 U.S. at 555). Therefore, Plaintiff's claims against Defendants Cookhouse Supervisors Howard and Mingo, as well as ITIs Wright, Martinez, Camron, and Starcher, are

dismissed without prejudice.[4] Plaintiff is given leave to amend sufficient against these defendants, and the Court will screen that complaint in due course.

### III. MOTION FOR A TEMPORARY RESTRAINING ORDER

As noted above, Plaintiff has separately filed a motion that the Court is construing as a motion for a temporary restraining order to prevent prison officials from transporting him out of NJSP. (*See* ECF No. 8).

To secure the extraordinary relief of a preliminary injunction or TRO, a plaintiff must demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants; and (4) granting the injunction is in the public interest." *Maldonado v. Houston,* 157 F.3d 179, 184 (3d Cir. 1998), *cert. denied,* 526 U.S. 1130 (1999) (as to a preliminary injunction); *Ballas v. Tedesco,* 41 F.Supp.2d 531, 537 (D.N.J. 1999) (as to temporary restraining order). A plaintiff must establish that all four factors favor preliminary relief. *Opticians Ass'n of America v. Independent Opticians of America,* 920 F.2d 187 (3d Cir. 1990).

On the merits of Plaintiff's attempt to avoid transfer, the Court notes that the United States Supreme Court has held that the Constitution confers no liberty interest in a prisoner's particular

---

[4] Additionally, Plaintiff's conclusory comments fail to state a claim for which relief may be granted. A defendant in a civil rights action must have personal involvement in the alleged wrongdoing. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Section 1983 liability, therefore, requires a "showing of direct responsibility" by the named defendant and eschews any "theory of liability" in which defendants played "no affirmative part in depriving any[one] . . . of any constitutional rights. . . ." *Rizzo v. Goode*, 423 U.S. 362, 376–77 (1976). In other words, to establish Section 1983 liability, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Here, Plaintiff has not pled how these defendants deprived him of a Constitutional right. As such, they are entitled to be dismissed without prejudice on this basis as well.

place of confinement. *See, e.g., Olim v. Wakinekona,* 461 U.S. 238, 245–46 (1983); *Meachum v. Fano,* 427 U.S. 215, 224–25 (1976). More significantly, however, this Court finds that Plaintiff has not shown any irreparable harm. Other than his own unsupported assertion, there is no indication that Plaintiff will be imminently transferred.[5] Insofar as Plaintiff has failed to establish the first two gateway factors for preliminary injunctive relief, the Court does not consider the remaining factors. *Reilly v. Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

## IV. CONCLUSION

For the reasons stated above, this Court will grant Plaintiff's request to proceed IFP and permit the Complaint to proceed as to the failure-to-protect, deliberate indifference, and retaliation claims against the named defendants in their individual capacities only. The remaining claims and defendants will be dismissed as noted above, with Plaintiff having leave to amend as aforementioned. Plaintiff's Motion for a TRO (ECF No. 8) will be denied. An appropriate order follows.

Dated: June 25, 2025

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[5] The Court notes that, according to the New Jersey Inmate Search, available at https://www-doc.state.nj.us/DOC_Inmate/inmatesearch, Plaintiff is still housed at NJSP, and thus, contrary to his motion which was filed in October of 2024, he is not imminently being transferred.