Joseph R. Lang, Esq., NJ ID # 022771985
Costadinos J. Georgiou, Esq. NJ ID # 408772022
LENOX, SOCEY, FORMIDONI, GIORDANO, LANG, CARRIGG & CASEY, LLC
136 Franklin Corner Road, Unit B-2
Lawrenceville, New Jersey 08648
(609) 896-2000
jlang@lenoxlaw.com
cgeorgiou@lenoxlaw.com
Attorneys for Defendant, **Ashraf E. Haggag, M.D.**

| | |
|---|---|
| JOHN DOE, <br><br> Plaintiff, <br><br> v. <br><br> NEW JERSEY STATE PRISON, et al., <br><br> Defendants. | **UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY** <br><br> **Civil Action No.: 3:24-cv-08290-ZNQ-JTQ** |

## BRIEF IN SUPPORT OF DEFENDANT DR. HAGGAG'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

**OF COUNSEL:**

Joseph R. Lang, Esq.

**ON THE BRIEF:**

Costadinos J. Georgiou, Esq.

1

**PRELIMINARY STATEMENT**

A complaint that fails to allege what a defendant did cannot state a claim against him. That is the defect that controls the present motion. In a seventeen-page, ninety-five-paragraph Verified Complaint naming more than twenty defendants, Plaintiff mentions Ashraf E. Haggag, M.D. ("Dr. Haggag") on only two occasions: once in the caption, and once in a generic parties paragraph that groups him with five other University Correctional Healthcare Rutgers providers. Nothing further is said about Dr. Haggag in the pleading. He is not tied to any clinical encounter, treatment decision, prescription, denial of care, or conversation with Plaintiff; he is not named in any of the Complaint's five enumerated causes of action; and he is not connected to any of the events that Plaintiff claims caused him injury. On the face of the pleading, Dr. Haggag did nothing.

That omission is not a mere technicality. It is the substantive failure that defeats every theory Plaintiff has attempted to advance. The governing pleading standard requires factual allegations from which the Court may draw the reasonable inference that the named defendant is liable for the conduct alleged. A pleading that supplies no facts at all as to what a given defendant did, offering only a conclusory grouping under a generic label of professional responsibility, does not satisfy that threshold. Plaintiff's claims against Dr. Haggag therefore fail as a matter of law, whether framed as federal civil rights violations, state-law medical malpractice, or under any of the remaining theories the Complaint invokes.

The deficiency is sharpest as to the single cause of action that could plausibly sound against a treating physician. A medical malpractice claim under New Jersey law requires a physician-patient relationship, an applicable standard of care, a deviation from that standard, and a causal connection between the deviation and the plaintiff's injury. The Complaint alleges none of these elements as to Dr. Haggag. Absent any allegation that Dr. Haggag examined Plaintiff, treated him,

2

or assumed any professional responsibility for his care, no duty arose, no standard of care attached, and no malpractice claim can proceed. Plaintiff's remaining theories, concerning failure to protect, hostile working environment, loss of property, and violation of the Prison Rape Elimination Act, are directed at custodial, correctional, and investigative staff, and bear no factual or doctrinal connection to a treating physician.

This is precisely the sort of pleading that Rule 12(b)(6) exists to screen out. The Complaint must therefore be dismissed as against Dr. Haggag, with prejudice, in its entirety.

## STATEMENT OF FACTS

Plaintiff is an inmate in the custody of the New Jersey Department of Corrections, confined at New Jersey State Prison in Trenton, and his Verified Complaint arises from his employment in the prison cookhouse from June 8, 2021 to July 31, 2022, together with two inmate-on-inmate assaults alleged to have occurred during that period. Exhibit A ¶¶ 8, 19, 27, 33.

The Complaint devotes substantial attention to the working and living conditions Plaintiff alleges he encountered during his cookhouse tenure, describing what he characterizes as unsafe conditions, inmate coworkers whom he accuses of stealing food and smuggling contraband, and cookhouse supervisors and custody staff whom he claims failed to respond to the harassment and threats he reported. Id. ¶¶ 20-26. Against that backdrop, Plaintiff alleges that, on August 23, 2022, he was assaulted inside the cookhouse walk-in freezer by two inmates who accused him of reporting their drug activity, that he reported the attack in writing on July 24, 2022, and that he was taken to the infirmary, where he was seen by Nurse Bass, who is said to have provided only pain medication. Id. ¶¶ 27-28.[1] Plaintiff further alleges that, on July 29, 2022, he was interviewed by an investigator

---

[1] The date of the first alleged assault is pleaded inconsistently throughout the Complaint. Plaintiff pleads the assault occurred on August 23, 2022 at paragraph 27, but pleads that he reported that same assault on July 24, 2022 at paragraph 28 and was interviewed about it by SID on July 29, 2022 at paragraph 31. At paragraph 53, in the First Cause of Action, Plaintiff dates the two assaults as having occurred on July 23, 2022 and July 31, 2022. The dates

from the prison's Special Investigations Division concerning both the assault and the underlying cookhouse activity. Id. ¶ 31. A second and more serious assault is alleged to have occurred on July 31, 2022, when Plaintiff, returning to his housing unit from a cookhouse shift, was struck from behind by two inmates and knocked unconscious. Id. ¶ 33. He was transported to an outside hospital's emergency trauma unit, where three lacerations to his head were closed, and he was returned to the prison infirmary that same afternoon. Id. ¶¶ 33-34.

The medical care Plaintiff describes receiving in the days and weeks that followed is attributed throughout the Complaint to specifically identified providers, each named in connection with a particular clinical encounter. On August 1, 2022, Plaintiff alleges that he was seen for the first time by Dr. Nwachukwu, who is alleged to have denied his requests for a neck brace and a pillow, kept him in the infirmary for nine days, and ultimately discharged him with a diagnosis of bruises. Id. ¶ 35. A dentist is said to have seen him in his infirmary cell on August 8, 2022 and found no injury to his jaw. Id. ¶ 41. On September 5, 2022, Nurse Practitioner Amazon is alleged to have declined to refer his injuries to a physician or specialist. Id. ¶ 44. The pleading goes on to describe subsequent interactions with Nurse Amazon at Plaintiff's cell door, along with a series of medical grievances, sick call requests, and communications with the Department of Corrections Ombudsman concerning his ongoing medical complaints. Id. ¶¶ 46-49, 51.

Dr. Haggag, by contrast, is scarcely mentioned in the pleading. He appears on only two occasions: he is listed in the caption as one of more than twenty individually named defendants, and he is referenced a single time in the body of the Complaint, at paragraph 16, where Plaintiff identifies him alongside University Correctional Healthcare Rutgers, Nurse Amazon, Nurse Bass, Oral Surgeon Samuel Lopez, and Dr. Diaz as medical professionals "responsible for the health care,

---

used throughout this brief are drawn from the factual paragraphs of the Complaint where each event is substantively pleaded.

diagnosis, treatment and safety, security, and supervision during Plaintiff's visits to the Prison Clinic." Id. ¶ 16. Beyond those two references, the pleading is silent as to Dr. Haggag. Plaintiff does not allege that Dr. Haggag ever examined him, treated him, prescribed him medication, declined to treat him, or interacted with him in any way; Dr. Haggag is not connected to any of the specific medical episodes described in the pleading, and he is not identified in any of the Complaint's five enumerated causes of action.

Those causes of action, each pleaded collectively against all defendants in their official and individual capacities, are styled as failure to protect from assault and physical injury, id. ¶¶ 52-58; hostile working environment, unsafe working conditions, and discrimination, id. ¶¶ 59-67; medical malpractice and deliberate indifference to the provision of emergency medical treatment, id. ¶¶ 68-74; loss of property and failure to provide proper hygiene and clothing, id. ¶¶ 75-80; and violation of the federal Prison Rape Elimination Act of 2003, id. ¶¶ 81-89. Plaintiff seeks compensatory damages, punitive damages, attorney's fees, and declaratory relief under each count.

In sum, notwithstanding the breadth of the pleading and the length of its factual narrative, the Complaint is devoid of any allegation that Dr. Haggag took, or failed to take, any action with respect to Plaintiff.

**STANDARD OF REVIEW**

Rule 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion for failure to state a claim, "courts accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quotations and citations omitted).

5

When considering a Rule 12(b)(6) motion, a district court conducts a three-part analysis. Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" Id. (quoting Iqbal, 556 U.S. at 679). Third, the court must determine whether the well-pleaded facts "plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 556 U.S. at 679); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). Although Rule 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." Id. at 570; Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. All reasonable inferences must be made in the plaintiff's favor. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**LEGAL ARGUMENT**

I.    **PLAINTIFF'S COMPLAINT MUST BE DISMISSED AS AGAINST DR. HAGGAG BECAUSE THE PLEADING ALLEGES NO ACT OR OMISSION BY HIM AND STATES NO CLAIM UNDER ANY THEORY ADVANCED.**

Plaintiff's Verified Complaint alleges nothing against Dr. Haggag. In a seventeen-page, ninety-five-paragraph pleading that names more than twenty defendants, Dr. Haggag is mentioned on only two occasions: once in the caption, and once at paragraph 16, where he is grouped with other University Correctional Healthcare Rutgers providers as a professional "responsible for the health care, diagnosis, treatment and safety, security, and supervision during Plaintiff's visits to the Prison Clinic." Exhibit A ¶ 16. That is the whole of it. Dr. Haggag is not tied to any clinical encounter, to any treatment decision, to any conversation with Plaintiff, or to any denial of care; he is not identified in any of the five enumerated causes of action; and he is not linked to any event that Plaintiff claims caused him injury. On the face of the pleading, Dr. Haggag did nothing.

That defect is dispositive. Rule 12(b)(6) requires factual allegations from which the Court can draw the reasonable inference that the named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Legal conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. Twombly, 550 U.S. at 555. Nor will a conclusory allegation that lumps a defendant together with others under a generic label of responsibility, without describing what that defendant actually did, support a claim against him. Paragraph 16 is precisely such an allegation, and it stands as the only allegation in the Complaint that even mentions Dr. Haggag by name. Having pled no facts from which liability could be inferred, Plaintiff's claims against Dr. Haggag fail as a matter of law, whatever label is placed on them.

The deficiency is sharpest as to the one theory that could plausibly sound against a treating physician: Plaintiff's medical malpractice claim. "Under New Jersey law, a plaintiff in a medical malpractice action must prove three elements: (1) there is an applicable standard of care, (2) a

deviation from that standard occurred, and (3) the deviation was [a] proximate cause of the harm sustained by the plaintiff." Hottenstein v. City of Sea Isle City, 977 F. Supp. 2d 353, 367 (D.N.J. 2013) (citing Verdicchio v. Ricca, 179 N.J. 1, 21-23 (2004)). Malpractice is a subset of negligence "refined to reflect the professional setting of a physician-patient relationship," and the plaintiff must therefore first establish that the defendant was subject to an applicable standard of care. Verdicchio, 179 N.J. at 21-23. Absent a physician-patient relationship, no standard of care attaches, and the claim cannot get off the ground.

The Complaint pleads no such relationship here. Plaintiff does not allege that Dr. Haggag ever examined him, treated him, prescribed anything for him, or assumed any professional responsibility for his care. With no physician-patient relationship pled, no standard of care attached; with no standard of care, there can be no deviation; and with no deviation, there can be no causation. Each of the three elements required under Verdicchio is absent, and the malpractice claim cannot proceed.

Plaintiff's remaining theories fare no better, and none of them even arguably reaches a treating physician. The First Cause of Action, for failure to protect, concerns the conduct of correctional officers and cookhouse supervisors who allegedly allowed Plaintiff to be assaulted. Exhibit A ¶¶ 52-58. Dr. Haggag is a doctor, not a custody officer, and nothing in the pleading suggests that he had any role in Plaintiff's housing, supervision, or protection. The Second Cause of Action, for hostile working environment, unsafe working conditions, and discrimination, concerns cookhouse working conditions and alleged discrimination by inmate coworkers and cookhouse staff. Id. ¶¶ 59-67. Dr. Haggag is nowhere alleged to have supervised, employed, or had any connection to Plaintiff's cookhouse assignment. The Fourth Cause of Action, for loss of property and failure to provide hygiene and clothing, concerns the conduct of property supervisors and

housing unit officers during Plaintiff's infirmary stay and subsequent placement in Unit 3EE. Id. ¶¶ 75-80. Dr. Haggag is nowhere alleged to have handled, processed, or borne any responsibility for Plaintiff's property or personal effects. And the Fifth Cause of Action, under the Prison Rape Elimination Act, concerns the alleged submission of a false PREA form by Sgt. Smith at the direction of the prison Administrator. Id. ¶¶ 81-89. Dr. Haggag is not alleged to have had any role in that incident or in any PREA-related matter whatsoever. Each of these counts requires, at a minimum, factual allegations tying the named defendant to the conduct sued upon, and the Complaint pleads none as to Dr. Haggag. The liberal construction afforded to a *pro se* pleading cannot supply what Plaintiff has failed to plead. See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that "*pro se* litigants still must allege sufficient facts in their complaints to support a claim"). Accordingly, the Complaint must be dismissed as against Dr. Haggag in its entirety.

## CONCLUSION

For the foregoing reasons, Dr. Haggag respectfully submits that this Court must grant the within motion and dismiss Plaintiff's Complaint as against him in its entirety, with prejudice, for failure to state a claim upon which relief can be granted.

**LENOX, SOCEY, FORMIDONI, GIORDANO, LANG, CARRIGG & CASEY, LLC**

/s/ *Costadinos J. Georgiou*
_____
Costadinos J. Georgiou, Esquire
Attorneys for Defendant
**Ashraf E. Haggag, M.D.**

DATED: April 30, 2026

9