# Exhibit A

MR. JOHN ARIAS
SBI#758754B - #248318
New Jersey State Prison
P.O. BOX 861
Trenton, New Jersey 08625
Plaintiff, Pro Se.

| | |
|---|---|
| JOHN ARIAS | UNITED STATES DISTRICT COURT |
|     PLAINTIFF, | FOR THE DISTRICT OF NEW JERSEY |
| (John Doe Protection Requested) | CIVIL ACTION NO._____ |
| | DISTRICT JUDGE: |
|     VS. | |
| New Jersey State Prison, | TITLE 42 U.S.C. 1983 & 1981 |
| Bruce Davis, Administrator, | OCCUPAIONAL SAFETY AND HEALTH |
| N.J. Dept. of Corrections, | ACT, MEDICAL MALPRACTICE N.J.S. |
| Victoria Kuhn. Commissioner, | RULE 4:21-1, AND FEDERAL LAW |
| Cookhouse Supervisor Howard, | ON MEDICAL "EMERGENCY" AND |
| Mingo, ITI Wright, Martinez, | ACTIVE LABOR ACT 1986 AND |
| Camron, Starcher and officers, | THE PREA ACT 2003 |
| Morrow, Kelley, Rubino, John and John Does; West Compound Custody Supervisor Lt. Crawford, Security Major Sears, John and Jane Does, S.I.D. Investigators Ms. DePalo, Goodwin, John and John Does; 6-Left Housing Unit Officers and Supervisors, John and John Does, Prison Infirmary Doctor Nwachukwu Dr. Haggad, Nurses Amazon, Bass, John and Jane Does; Infirmary Sgt Smith, officers John & Jane Does; University Correctional Health- care Rutgers, Dr. Samuel Lopez, Dr. Diaz, and John & Jane Does; 3EE Unit officers Cupo, John and Jane Does; Property Supervisor Mendosa, officers Jonn and Jane Does; 3DD Unit Supervisor Sgt. Stives, Sgt. Orlo, and officers John and Jane Does; All in their official and individual capacity et al. | VERIFIED COMPLAINT<br><br>AND<br><br>DEMAND FOR A JURY TRIAL |
|          DEFENDANTS. | |



RECEIVED

AUG 0 5 2024

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

TO: MR. MATT PLATKIN, NEW JERSEY ATTORNEY GENERAL
    Office of the Attorney General of New Jersey
    Department of Law & Public Safety
    Richard J. Hughes Justice Complex
    P.O. BOX 112, Trenton, New Jersey 08625

And attorneys for all the above named defendants as stated herein.
Date mailed on 7/23/2024

Page 1 of 17

## I. CIVIL RIGHTS COMPLAINT WITH A JURY DEMAND

1. This is a civil action for violations of Constitutional Rights under color of State Law, and these Rights are protected under the authority of Title 42 U.S.C. Sec. 1981, 1983. and 1985(3), the Occupational Safety and Health Act 1970, Medical Malpractice under N.J.S. Rule 4:21-1, the Federal Law on Medical "Emergency" and Active Labor Act 1986, and the Civil Rights Act of 1991 and the PREA Act of 2003.

2. Plaintiff Alleges violations of Constitutional Rights, violations of State and Federal Laws, and violations of work safety, security and health standards by Correctional officials of New Jersey State Prison.
To redress these acts the plaintiff is seeking a declaratory judgment, punitive and compensatory damages and refund for all legal costs and attorney fees incurred on Plaintiff to bring this action against all of the above defendants.

3. Plaintiff Request a Trial by a Jury.

4. Plaintiff States that he has no previously dismissed Federal Civil Actions or Appeals. Plaintiff further states that this legal action presents evidence and claims that Plaintiff is a prisoner under imminent danger of serious physical injury per 28 U.S.C. section 1915(g) Plaintiff prays this Court will treat this suit as an "Emergency" with properly expediency.

## II. JURISDICTION

5. This action arises under the authority of Title 42 U.S.C. Sec. 1983, 1981 and 1985(3); The Constitution of the United States, 1st, 4th, 5th, 8th, and 14th Amendments of the United States Constitution and the laws of the State of New Jersey as here in fully appears. The Occupational Safety and Health Act 1970, Medical Malpractice under N.J.S. Rule 4:21-1, the Federal Law on Medical "Emergency" and Active Labor Act 1986, the Civil Rights Act of 1991, and the PREA Act of 2003.

6. This Court also has jurisdiction over the Federal claims pursuant 28 U.S.C. ß 1331, 1343 (3-4), and supplemental Jurisdiction is asserted over State Law claims under 28 U.S.C. ß 1367.

7. Plaintiff seeks a Declaratory relief pursuant to 28 U.S.C, ß 2201 and 2202.

## III. PARTIES

8. Plaintiff, John Arias, Inmate Number 248318, (herein after "John Doe") is a prisoner of the State of New Jersey under the custody of the Commissioner of the Department of Corrections at New Jersey State Prison, located on 3rd. and Federal Streets, Trenton, New Jersey 08625.

9. Defendant, New Jersey State Prison (herein after "NJSP")and Administrator Bruce Davis (herein after "Admin. Davis")is the

Administrator of New Jersey State Prison, and John and Jane Does for those officials whose names are not known at this time. At all relevant times were employed by defendant "NJSP" located at 3rd. and Federal Streets, P.O. Box 861, Trenton, New Jersey 08625. "NJSP" officials are responsible for the lawful operation of the prison and the cookhouse. They are responsible for implementing policies and procedures including safety, security, supervision, and for the humane treatment of prisoners in the cookhouse and housing units of the prison. They are state actors acting under the color of state law.

10. Defendants, N.J. Dept. of Corrections, (herein after "NJDOC") Victoria Kuhn. Commissioner (herein after "Commissioner Kuhn")and John and Jane Does for those officials whose names are not known at this time. "NJDOC" is an entity existing under the laws of New Jersey, with an office for the acceptance of services at P.O. Box 863, Whittleysey Road, Trenton, NJ 08625. "Commissioner Kuhn" is the official responsible for the lawful operation of "NJSP". With an office for the acceptance of service same as above for "NJDOC". Defendants are being sued both individually and in their official capacity.

11. Defendants, Cookhouse Supervisor Howard, (herein after "Howard"), Cookhouse Supervisor Mingo (herein after Mingo") ITI's Wright, Martinez, Camron, and Starcher (herein after "Wright," "Martinez," "Camron", and "Starcher" ) and Cookhouse officers, Morrow, Kelley, Rubino, (herein after "Morrow," "Kelley," and "Rubino") John and Jane Does for those officers whose names are not known at this time. Were the officials responsible for safety, security, training and supervision of the Prison Cookhouse.

12. Defendants, West Compound Custody Supervisor Lt. Crawford, (herein after "Lt. Crawford"), Security Major Sears (herein after "Major Sears") and John and Jane Does for those officials whose names are not known at this time. Were the officials responsible for safety, security, and supervision of the Prison west Compound where the Cookhouse is located as well as the prison housing units.

13. Defendants, Special Investigations Division, (herein after "SID"), investigators Ms. DePalo, (herein after "Ms. D."), Mr. Goodwin (herein after "Goodwin") and John and Jane Does, investigators whose names are unknown at this time. Were the investigating officials responsible for conducting proper investigation procedures to protect the safety, security, and well-being of the Plaintiff. They were obligated to protect the Plaintiff after they called him to become a C.I.

14. Defendants, 6-Left Housing Unit Officers and Supervisors John and Jane Does, are officials whose names are not known at this time. Were the officials responsible for safety, security, and supervision of the prison's 6-Left Housing Unit where all the Cookhouse workers are assigned to live.

15. Defendants, Prison Infirmary Doctor Nwachukwu, (herein after "Dr. Nwachukwu"), Prison Infirmary Nurses John and Jane Does, infirmary Sgt. Smith, and infirmary officers Jane and John Does. Were the medical professionals responsible for the health care, diagnosis, "Emergency" medical treatment and safety, security, and supervision of the Prison's infirmary.

16. Defendants, University Correctional Healthcare Rutgers, (herein after "UCHC"), Prison Clinic Dr. Haggad (herein after "Dr. Haggad") Prison Infirmary and Clinic Nurses Amazon, Bass (herein after "Amazon, and "Bass"), Oral Surgeon Samuel Lopez and Dr. Diaz (herein after "Dr. Lopez" and "Dr. Diaz") and John and Jane Does. For the health care agencies and individuals whose names are not known at this time. Clinic Escort officer Nieves. Were the professionals responsible for the health care, diagnosis, treatment and safety, security, and supervision during Plaintiff's visits to the Prison Clinic.

17. Defendants, Prison housing unit officers and supervisors from units 3EE, and 3DD John and Jane Does. Whose names are unknown at this time, had the responsibility to house the plaintiff under safe and constitutional conditions.

18. Defendants, Property Supervisors and officers John and Jane Does are individuals whose names are not known at this time. Were responsible for checking and processing Plaintiff's property without loosing or stealing or allowing inmates to steal Plaintiff's property including personal documents and family pictures. They are being sued both individually and in their official capacity.

## IV. STATEMENT OF FACTS

19. Plaintiff, "John Doe" worked for the NJSP Cookhouse from June 8, 2021 to July 31, 2022. From the first day Plaintiff began working in the cookhouse he noticed many problems. First there was no formal training on safety or cooking hygiene. Second, Plaintiff saw how a lot of inmates were stealing all kinds of things from the cookhouse and selling them and this seem to be normal business. Also Plaintiff noticed how the cookhouse workers had the best access to smuggle any kind of contraband and distribute it all over the prison. Soon Thereafter Plaintiff notice how some inmates were given special treatment, for being black Muslims. Plaintiff noticed how these inmates harassed coworkers because they were not black or Muslims and that they had their own routine. They were allowed to stop working to go pray. While Plaintiff and about 10 of the 33 workers who were not Muslims had to continue working. Plaintiff soon saw how those inmates abused that religious privilege to steal and gang up on inmates who are not black Muslims. One of this Black Muslims is the top paraprofessional inmate, called ROCK, and he stated to Plaintiff to just do his job and keep his mouth shut. Plaintiff wanted to keep his job so he did as instructed.

Case 3:24-cv-08290-ZNQ-JTQ    Document 28-5    Filed 04/30/26    Page 6 of 18 PageID: 183
Case 3:24-cv-08290-ZNQ-JTQ    Document 1 *SEALED*    Filed 08/05/24    Page 5 of 17
PageID: 5

20. Plaintiff's first assigned job was to clean the cafeteria which he saw had roaches dead and alive all over the floor and he saw rats running in and out of holes. For the next job Plaintiff was told to work in a food preparation line preparing trays and to work with inmate Richardson who later other inmates explained had many problems working with other inmates because he is a bully. Thus, the reason they had to pick Plaintiff as a new worker to work with him. Plaintiff soon saw the abuse by this inmate who began complaining cursing and bullying him and other inmates and even the ITI's. (civilian cooks). The officers and ITI's did nothing to reprimand or stop him from harassing Plaintiff and others. After about 2 months of this abuses Plaintiff talked to the ITI and requested another job assignment, and was given the job of a floater which meant cleaning the cookhouse. Again there was an infestation of roaches and rats in the cookhouse and there was so much dust and grease that it easily contaminated the food being prepared.
But Plaintiff was not able to say anything for fear of loosing his job. After a few more months Plaintiff was given a job on the Production line by Supervisor Howard. Plaintiff was partnered to work with another tall black Muslim named Wakefield who has mental issues, was taking psychiatric medication and was stealing big quantities of food and selling them to other inmates in different housing units of the prison. Plaintiff had no choice but to keep his mouth shut in order to keep his job. Inmate Wakefield abused his job in every way he could and no supervisor or officer did anything to stop him. Finally, one day supervisor Howard saw inmate Wakefield stealing a big pan of raw turkey legs and fired him on the spot. Plaintiff new that this inmate had stolen hundreds of big pans of all kinds of food which he sold to other inmates and that his business was possible by his connection with the other black Muslims during the prayer time they had together in the cookhouse and in the general population Muslim prayer session that all Muslims attended on Fridays. This inmate was also not the only one doing this, other Muslim inmates were doing the same with drugs and many other things.

21. On 9/3/21 an inmate named Steven was hired to be a cookhouse worker, this inmates began playing sexual games and sexually harassing inmates. The officers and ITI's did nothing to stop this harassment. Plaintiff also noticed that although The PREA Law was mandatory to be posted on all housing Units, there was no postings in the cookhouse. Also there was no posting of the PREA Law in unit 6-left and this inmate Steven a fat white dude was also doing the same sexual harassment in Unit 6-Left, specially when other inmates were taking showers in the open showers of unit 6 Left.

22. On 11/10/21 Plaintiff reported that a black dust was coming out of the ventilation and getting all over the food and food containers. Nothing was done and a few day later Plaintiff got sick with a sore throat and running nose. Plaintiff got an Emergency sick call pass from the cookhouse officer and went

to the clinic. Nurse Ebo told plaintiff to go back to work and that next time to put in a sick call slip like everyone else and to pay the $5 dollars co-pay. Plaintiff wrote a medical grievance and was seen again by nurse Ebo and this time referred him to a doctor who put Plaintiff on a no work order and gave plaintiff some medication.

23. On 10/12/21 one of the cookhouse workers killed himself by a drug overdose. Plaintiff again was warned by the inmate paraprofessional Rock to keep his mouth shut. On another incident the other inmate paraprofessional called Alamo threatened to beat-up the Plaintiff right in front of 2 ITI's or civilian cook supervisors, and they did nothing to stop it.

24. On another incident Alamo offered to pay one inmate to beat up a Chinese coworker. Many incidents occurred such as this where black Muslim inmates threaten to beat up others in the walk-in freezers because it was out of the sight of view of the officers and ITI's. On another incident inmate J. Venable threatened ITI starcher in front of the officers and this inmate was not reprimanded or fired. One of the most serious incidents was when one gang member inmate threw hot oil on another gang member and stabbed him for calling him a snitch.

25. Also in the Housing unit 6-left many incidents were taking place where inmates were selling all kinds of contraband and fights were taking place out of the view of officers. Unit 6 Left had a population of about 150 inmates most of whom were black inmates and many were Muslims and gang members, Crips, Bloods and Latin Kings. The situation in unit 6 left became so dangerous that Plaintiff decided to report one incident to the cookhouse officer Rubino and he referred it to Supervisor Sgt. Woolfson, but nothing was done. 2 months later the same inmate Plaintiff reported to officer Rubino and a Supervisor, punched officer Wilson in the face in unit 6-left.

26. On 12/10/21 Officer Rubino fired inmate Daniel Rios for making threats and a few months later this inmate was put back in unit 6-left and given a job in the unit. Also after that many Latin King inmates were moved to unit 6 Left.

27. On 8/23/22, while doing his job in the Cookhouse, Plaintiff was assaulted by 2 black Muslim inmates in the Cookhouse walk-in freezer. They were stealing and dealing drugs in the cookhouse and accused Plaintiff of telling on them. Plaintiff suffered injuries to his head, forehead, nose and leg. After being punched several times.

28. On 7/24/22 Plaintiff reported this assault by a written letter to the housing Unit officers and Supervisor and was taken to the infirmary for his injuries. Plaintiff was seen by Nurse Bass who only gave Plaintiff some pain medication. Plaintiff was then put under lock-down in a single cell in unit 3B. Two days later Plaintiff was interviewed by investigators from the

prison Special Investigations Division, SID. Plaintiff explained how he was assaulted, why and by whom.

29. On July 27, 2022 Plaintiff was told to return to Unit 6 Left and continue working in the cookhouse.

30. On July 28, 2022 Plaintiff returned to work at the cookhouse.

31. On July 29, 2022 at about 3:30pm Plaintiff was called and scorted to see SID Investigator Ms. DePalo who informed Plaintiff that one of the inmates that assaulted him is a very dangerous individual and that SID is investigating inmate Mosley AKA Hak for drug smuggling in the cookhouse. "Ms. D" asked Plaintiff to help with their investigation and that she can protect Plaintiff. She provided Plaintiff a phone number where she said Plaintiff can call her 24/7 for any emergencies and to call her Ms. D.

32. On July 30, 2022 Plaintiff called Ms. D. and let her know that he was in danger because he was threatened by coworkers in the cookhouse and other coworkers told him, "watch your back" and Plaintiff no longer fell safe in the cookhouse or in Unit 6-Left and requested to Ms. D. to move him to another unit for his own protection. Ms.D. stated call me back in a few hours and I will let you know. Plaintiff Called Ms. D. later that day and Ms. D. stated she can not move Plaintiff until Monday. Plaintiff requested that he be moved to the Protective Custody Unit because is an emergency. Ms. D. stated there is nothing I can do until Monday and even then I can not move you to Protective Custody.

33. On Sunday July 31, 2022 Plaintiff went to work at the Cookhouse from 4AM to 10AM. Upon Returning to the Housing Unit 6-Left Plaintiff was assaulted by 2 inmates who sucker punched him from behind and knocked him unconscious. Plaintiff was semi-conscious when he heard the prison emergency code 33 and 53 being called and then saw he was bleeding all over and was unable to walk. Officers responding to this emergency picked up Plaintiff of the floor and waited for a nurse who put a bandage on Plaintiff's head to stop the bleeding. Plaintiff was then put in a wheelchair and taken to the prison clinic where he was seen by other medical staff. Plaintiff had serious injuries, 3 cuts to his head and was unable to walk. Plaintiff was taken to the Hospital Emergency Trauma Unit where a doctor closed 3 cuts on his head and recommended further treatments and to be send to the Prison Infirmary.

34. On July 31, 2022 at about 3:30PM Plaintiff was returned to the prison and put in a wheelchair and taken to the Infirmary. The Infirmary officer began screaming at Plaintiff for no reason telling Plaintiff he had to tell him what happened and telling Plaintiff "you better not get anybody in trouble". Plaintiff head was very swollen and he could not walk and was heavily medicated and kept quiet and laid on a bed to rest, and was not seen by a doctor until the next day.

35. On 8/1/22 Plaintiff was seen by "Dr. Nwachukwu" for the first time and she stated they were trying to get Plaintiff's records from the Hospital to see the extent of his injuries. Plaintiff informed "Dr. Nwachukwu" about the injury to his neck and jaw and that he was unable to walk and requested a neck brace and a pillow to help him rest and heal his neck. This was denied by "Dr. Nwachukwu" and that very same night Plaintiff reinjured his neck, while trying to sleep and passed out from the pain. Next day Plaintiff reported this incident to the nurse and Doctor and they again refused to provide him a neck brace and a pillow. For 9 days Plaintiff was kept in the infirmary without the treatment recommended by the hospital doctors and was told by "Dr. Nwachukwu" that she was trying to get his x-rays from the hospital. Finally on the 8 day an x-ray was taken of Plaintiff's head, neck and back and the next day "Dr. Nwachukwu" informed Plaintiff that he only had bruises and she was sending him back to the housing unit.

36. On 8/1/22 investigators from SID interviewed Plaintiff in the infirmary and took pictures and video of his injuries. Also on this date Plaintiff requested to use the phone to call his family to let them know of his injuries and he was denied the use of the phone by infirmary officers. No body called Plaintiff's family to let them know of the Emergency Medical condition and injuries he had suffered.

37. On 8/2/22 Plaintiff was awaken at 6:30am by an inmate screaming and threatening Plaintiff at the door of his cell in the infirmary. The infirmary officers allowed this to happened and this inmate was the pantry workers in the infirmary. Plaintiff reported this incident to SID investigators who again interviewed him that day and Plaintiff provided them more information about the unsafe conditions in the cookhouse and the housing unit 6 left and how he was assaulted.

38. On 8/3/22 Plaintiff spoke with "Ms. D." and she agreed to put Plaintiff under Protective Custody. Later that day at about 3pm Sgt. Smith opened Plaintiff's cell door and began screaming "I got a P.C. form for you, and you got to sign it." I signed it and he left.

39. On 8/4/22 "Ms. D." interviewed Plaintiff in the infirmary and assured Plaintiff that she will investigate the assault and will protect Plaintiff from any further retaliation. Later that day at about 4PM Sgt. Smith again opened Plaintiff's cell door and began screaming "I got a PREA form for you the administrator send this for you and you got to fill it out and sign it." Plaintiff refused to fill out the form and to sign the PREA form and Sgt. Smith still filled out the form and submitted it. Later Sgt. Smith returned with 2 sex abuse/rape victim counselors asking to talk to Plaintiff and he again refused.

40. On 8/5/22 at about 2PM one of the cookhouse inmates, a gang

Page 8 of 17

member who assaulted Plaintiff was put in the cell next to him in the infirmary. Inmate J. Venable. This inmate began making threats against Plaintiff and telling other inmates who worked in the infirmary that Plaintiff is a snitch and not to do anything for him. Plaintiff called the officer working in the infirmary and informed him of this and he stated, "I can not do anything the Sgt. was the one who put that inmate there." For the next days this inmate and others continued threatening and calling Plaintiff a snitch. They were screaming gang calls of shots being fired and threatening Plaintiff by screaming saying "snitches get stitches." The infirmary workers were bringing inmate Venable bags of commissary food and special food trays and the officers facilitate this by opening the door to giving these things to inmate Venable.

41. On 8/8/22 a dentist saw Plaintiff in his cell in the infirmary and said he saw nothing wrong with his jaw.

42. On 8/9/22 at 4pm Officer Cupo scorted Plaintiff to a Protective Custody Unit 3EE, Officer Cupo began asking questions about the incident and Plaintiff refused to comment. Plaintiff requested to officer Cupo to call for his property because he had nothing to shower with or change of clothes. Officer Cupo stated you will get your property when they are ready to give it to you. It took about a month for Plaintiff to get his property. Plaintiff had to sleep in clothes that still had his blood on them and bed cheats that still had his blood on them. Plaintiff called the Ombudsman to report this and about his property and Sgt. Stives came to his cell door with officer Tallar and screamed from the door "I am not coming in the cell because you might file a PREA on me. Later Plaintiff heard officer Tallar tell other inmates that Plaintiff is an SID informant. One inmate began screaming "He is a Notorious SID informant."

43. On 8/27/22 officer Tucker gave Plaintiff his property. Plaintiff notified officer Tucker that a box was missing and he stated write to the property Sgt. Plaintiff wrote to property on 8/18/22, 10/20/22 and a Property Claim for his lost Property on 9/27/22

44. On 9/5/22 Plaintiff was seen by Nurse Practitioner Amazon, she refused to refer his injuries to a doctor or specialist.

45. On 9/11/22 Plaintiff made a phone Call to NJDOC Medical Ombudsman Elizabeth Mathews about the assault incident and 3 injuries that still need to be properly treated and properly diagnosed.

45. On 7/31/22 to 8/9/22 Plaintiff was forced to sleep in the same clothes that had his blood on it for the duration of the 9 days he was in the infirmary. He also was forced to sleep on a sheet and blanket that had his blood on it, without being able to wash it. Plaintiff had nothing of his property, no

hygiene products or change of clothes. No overnight bag. While Plaintiff was forced to live under this torturous conditions trying to heal from serious injuries, one of the inmates who assaulted Plaintiff was put in the cell next door to him in the infirmary and he came with 2 big bags of property and other inmates delivered him a bag full of commissary food and the officers in the infirmary facilitated this by opening his cell door for him to get special trays of food that other inmates were providing him. This all took place while Plaintiff was being harassed and threaten by this inmate and others who worked in the infirmary. Plaintiff asked the officers to let him talk to the supervisors and the officers refused to do so.

46. Plaintiff wrote the following Medical requests, inquiries and grievances to the prison Medical Department and the Prison administration and they were less than caring or understanding of the seriousness of the my injuries and the need for medical treatment.

47. First Medical Grievances on: 8/23/22, Answer by G. Byfield, Appeal on 9/22/22 Answer by K. Mosley-Massenat
2nd Medical Grievance on 4/25/23 Answer 4/27/23 by J. Mcduffie, Appeal on 9/22/22, Answered on 5/10/23 by A. Emrich
3rd Medical Grievance on 6/3/24. Answered on 6/27/24 by T.Miller, Appeal on 7/2/24, Answered on 7/9/24 By T. Miller.

48. MR-007 Medical Sick call Requests on: 1/5/23, No Response
MR-007 Medical Sick call Requests on: 4/3/23, Answered by S. Spingler

MR-007 Medical Sick call Requests on: 11/7/23, Answered by K. Mosley-Massanet on 11/25/23
MR-007 Medical Sick call Requests on: 5/27/24, Answered by K.Bass on 6/3/24
MR-007 Medical Sick call Requests on: 6/4/24 by M. Benjamin, Answered by M/ Ebo on 6/5/24
MR-007 Dental Sick call Requests on: 7/22/24, Answered on 7/22/24 by L/ Pettorini and O. Somuah-Oduro
Medical Inquiry to prison Administration for no Answer on 4/11/23, Answered by J. McDuffie
Medical concern/treatment request on 12/26/23, Answered by Zhou

49. Plaintiff's 3 page Letter to NJDOC Medical Ombudsman on 10/30/22 regarding Medical Grievance for improper/inept medical diagnosis, treatment and care by Dr. Nwachukwu in the infirmary for 9 days and requesting follow up treatment that was not provided and the inept response by nurses Amazon and Bass.
Answered on 11/16/22 by Amy Southwick, Assistant Ombudsman stating she notified UCHC University Correctional Healthcare Statewide Medical Patient Advocate and Department of Corrections Director of Medical Services and dental Services, as well as other medical staff.
Second letter to Medical Ombudsman on 11/23/22 Answered on 11/29/22 by Melissa Mathews Assistant Ombudsman.

Page 10 of 17

Case 3:24-cv-08290-ZNQ-JTQ    Document 28-5    Filed 04/30/26    Page 12 of 18 PageID: 189
Case 3:24-cv-08290-ZNQ-JTQ    Document 1 *SEALED*    Filed 08/05/24    Page 11 of 17
PageID: 11

She stated she notified UCHC Statewide Medical Patient Advocate and Department of Corrections Director of Medical Services and dental Services.

Phone call to NJDOC Ombudsman on 12/14/22 requesting help getting medical care. Letter reply on 12/18/22 by Melissa Mathews Assistant Ombudsman.

Phone call to NJDOC Ombudsman on 1/4/22 and letter on 1/22/23 Requesting help to make a PREA report for Sexual Harassment by 3 inmates. Letter reply on 1/26/23 by Melissa Mathews Assistant Ombudsman, her letter stated she referred my complaint to PREA Compliance Unit for Investigation.

Phone call to NJDOC Ombudsman on 3/7/23 for help with a dental emergency. Letter reply on 3/8/23 stating she notified UCHC Statewide Medical Patient Advocate and Department of Corrections Director of Medical Services and dental Services, as well as other Medical staff.

Letter by Ombudsman K. Leonard on 3/6/24 regarding my request for medical care/treatment that have gone unanswered by the medical department at the prison. He notified me that he forwarded my concern to UCHC-Rutgers and NJDOC Health Compliance Unit.

50. Plaintiff has also been having problems with his present Protective custody housing because he is being housed in the same unit where gang members are under involuntary P.C. some of these inmates Plaintiff has reported for making threats against Plaintiff. Also officer Nieves has to scort Plaintiff to the clinic and this officer is always complainig about plaintiff going to medical and he has refused many times to take Plaintiff to his medical appointments. Plaintiff also saw and heard officer Nieves tell a gang members inmate that Plaintiff was going to see SID. Plaintiff has written inquiries and grievances to Prison Administration and SID on 7/29/22, 7/26/22, 7/9/22 and to SID on 8/12/22, to Custody Supervisors on 11/8/22

51. On two occasions Nurse Amazon came to Plaintiff's cell door to question him about his medical request in front of where other inmates can hear about Plaintiff's medical injuries and that he suffered an assault. Plaintiff told nurse Amazon that medical interviews need to be treated per the law of privacy. Plaintiff also wrote a grievance for this violation of medical privacy.

## V. FIRST CAUSE OF ACTION
### Violations of Constitutional Rights
### Failure to Protect from assault and physical injuries

52. The actions of the defendants as stated in paragraphs 19 through 51 denied plaintiff's Constitutional Rights, Amendments 1st., 5th., 8th., and 14th of the United States Constitution and the protections of State and Federal laws: The Occupational Safety and Health Act 1970, the Federal Law on Medical "Emergency" and Active Labor Act 1986, the Civil Rights Act of 1991, and Title 42 U.S.C. Sec. 1981.

53. On 7/23/22 and 7/31/22 Plaintiff was assaulted as a direct result of the illegal and dangerous conditions that were allowed by the defendants to taken place in the cookhouse of "NJSP". Defendants were under the duty to protect plaintiff's from safety violations that had the capacity to seriously harm the plaintiff's personal safety, health and well-being.

54. <u>Defendants' breached the above duty by the following actions:</u>

1. They failed to protect plaintiff from assaults, racial discrimination, religious discrimination and harassment by Black Muslim coworker inmates.
2. They caused irreparable damage to plaintiff's health and living conditions by subjecting him to careless and reckless behavior of gang members and drug dealers working in the prison cookhouse.
3. They deliberately inflicted Cruel and Unusual Punishment on Plaintiff by allowing a hostile working environment that allowed discrimination and threats on a daily basis in the prison cookhouse.
4. Defendants acted with deliberate indifference by failing to follow the legal safeguards to conduct a proper investigation and failure to protect the Plaintiff after SID investigators requested that Plaintiff provide them information about the people who were smuggling drugs and cellphones in the prison cookhouse. And after Plaintiff was called to speak to SID investigators for an hour on 7/29/22.
5. Defendants deliberately inflicted physical, psychological and emotional distress on the Plaintiff on a daily basis by their failure to prevent dangerous working conditions. And dangerous housing living conditions.
6. Defendants discriminated or allowed plaintiff to be harassed by their words and/or actions or failure to act according to law and correctional standards for safety and security.


## RELIEF REQUESTED

55. Plaintiff request an entry of a final judgment for the civil and Constitutional Rights violations of failure to protect the Plaintiff from assault and physical injuries, as stated in the above caption suit against all defendants in their official and individual capacities, jointly, severally and in the alternative.

56. Plaintiff seeks an entry of a final judgment for compensatory damages against each defendant in the amount of $100.000 (One hundred thousand dollars U.S. Currency)

57. Plaintiff seeks an entry of a final judgment for punitive damages against each Defendant in the amount of $100.000 (One hundred thousand dollars U.S. Currency.)

58. Plaintiff seeks an award for legal cost and attorney fees pursuant to 42 U.S.C. 1988. And any further relief that this Court may deem just and proper.

Case 3:24-cv-08290-ZNQ-JTQ    Document 28-5    Filed 04/30/26    Page 14 of 18 PageID:
191
Case 3:24-cv-08290-ZNQ-JTQ    Document 1 *SEALED*    Filed 08/05/24    Page 13 of 17
PageID: 13

## VI. SECOND CAUSE OF ACTION

**Hostile Working Environment, Unsafe Working Conditions, Racial and Religious Discrimination, Violations of Worker Safety, Health and Training under OSHA.**

59. Plaintiff repeats and incorporates the claims and facts stated on his prior count as if set forth herein at length.

60. Plaintiff has been injured and will continue to suffer permanent injuries and imminent danger if conditions are not remedied by prison officials. Defendants breached the above duty by failing to comply with Federal and State laws that protect Plaintiff from violations of the Occupational Safety and Health Act 1970, the Civil Rights Act of 1991 and Title 42 U.S.C. Sec. 1981

61. Defendants careless and reckless action iolated Plaintff rigths and cost him his job and freedom whithin the prison general population, as well as many injuries, pain and suffering.

62. As a direct result of the defendants iolastions Plaintiff is now confined under Protectie Custody in solitary confinement since July 31, 2022 to the present time. And he continues to be harassed and threatened by gang members inmates and drug dealers.

### RELIEF REQUESTED

63. Plaintiff request an entry of a final judgment for the civil and Constitutional Rights violations of failure to protect the Plaintiff from assault and physical injuries, as stated in the above caption suit against all defendants in their official and individual capacities, jointly, severally and in the alternative.

64. Plaintiff seeks an entry of a final judgment for compensatory damages against each defendant in the amount of $100.000 (One hundred thousand dollars U.S. Currency)

65. Plaintiff seeks an entry of a final judgment for punitive damages, physical injuries and pain and suffering caused by each Defendant in the amount of $100.000 (One hundred thousand dollars U.S. Currency.)

66. Plaintiff seeks compensation for his lost of job and privileges caused by the defendants in the amount of $100.000 (One hundred thousand dollars U.S. Currency.)

67. Plaintiff seeks an award for legal cost and attorney fees pursuant to 42 U.S.C. 1988. And any further relief that this Court may deem just and proper.

## VII. THIRD CAUSE OF ACTION
**Medical Malpractice and deliberate indifference to provide**

Case 3:24-cv-08290-ZNQ-JTQ    Document 28-5    Filed 04/30/26    Page 15 of 18 PageID:
182
Case 3:24-cv-08290-ZNQ-JTQ    Document 1 *SEALED*    Filed 08/05/24    Page 14 of 17
PageID: 14

**Emergency and proper health treatment to an injured prisoner
Medical abuse, Physical and Psychological Torture**

68. Plaintiff repeats and incorporates the claims and facts stated on his prior counts as if set forth herein at length.

69. Plaintiff has been injured and will continue to suffer permanent physical injuries and Post traumatic distress as a result of defendants deliberate neglect of proper medical treatment. Defendants breached the above duty by failing to comply with Federal and State laws, The Constitution of the United States, 1st, 4th, 5th, 8th, and 14th Amendments of the United States Constitution, the Occupational Safety and Health Act 1970, Medical Malpractice under N.J.S. Rule 4:21-1, the Federal Law on Medical "Emergency" and Active Labor Act 1986,

## RELIEF REQUESTED

70. Plaintiff request an entry of a final judgment for the civil and Constitutional Rights violations for Medical Malpractice and deliberate indifference to provide "Emergency" health treatment as stated in the above caption suit against all defendants in their official and individual capacities, jointly, severally and in the alternative.

71. Plaintiff seeks first and foremost to recover his health and he request this Court will grant him an order mandating that plaintiff be given a full medical examination by a private physician who has a private practice and is indepent of all the defendants and that the defendants be ordered to pay the cost of this doctor and any follow up medical treatment that this doctor deems necessary for Plaintiff to recover from the injuries he has suffered.

72. Plaintiff seeks an entry of a final judgment for compensatory damages against each defendant in the amount of $100.000 (One hundred thousand dollars U.S. Currency)

73. Plaintiff seeks an entry of a final judgment for punitive damages against each Defendant in the amount of $100.000 (One hundred thousand dollars U.S. Currency.)

74. Plaintiff seeks an award for legal cost and attorney fees pursuant to 42 U.S.C. 1988. And any further relief that this Court may deem just and proper.

## VIII. FOURTH CAUSE OF ACTION
**Lost of Property, failure to provide proper hygiene and clothing for an injured prisoner housed in the infirmary and Unit 3EE**

75. Plaintiff repeats and incorporates the claims and facts stated on his prior counts as if set forth herein at length.

76. Defendants were under the duty to properly check, process and deliver to Plaintiff all of his property without losing

Case 3:24-cv-08290-ZNQ-JTQ    Document 28-5    Filed 04/30/26    Page 16 of 18 PageID: 193
Case 3:24-cv-08290-ZNQ-JTQ    Document 1 *SEALED*    Filed 08/05/24    Page 15 of 17
PageID: 15

anything or without allowing any inmate to steal or loose plaintiff's property.

77. Defendants were also under a duty to provide Plaintiff with proper clothing and hygiene items while he was injured in the infirmary on the dates of 7/31/22 to 8/9/22 and after this while he was being housed in Unit 3EE. with nothing. Plaintiff was forced to sleep in the same clothes that had his blood on it for the duration of the time he was in the infirmary, One of the inmates who assaulted plaintiff was put next door to him in the infirmary and he came with 2 big bags of property and other inmates delivered him a bag full of commissary food and the officers in the infirmary facilitated this by opening the door for him. This all took place while Plaintiff was being harassed and threaten by this inmate and others who worked in the infirmary. Plaintiff asked the officers to let him talk to the supervisors and the officers refused to do so.
This is a gross violation of Prison safety rules and places Plaintiff in imminent danger of being assaulted again by other drug dealers and gang member inmates.

## RELIEF REQUESTED

78. Plaintiff seeks compensatory damages in the amount of $100.000 (One hundred Thousand Dollars U.S. Currency.)

79. Plaintiff seeks punitive damages in the amount of $100.000 (One hundred Thousand Dollars U.S. Currency.)

80. Plaintiff seeks an award of cost and attorney fees pursuant to 42 U.S.C. 1988.

## IX. FIFTH CAUSE OF ACTION
## The Federal Prison Rape Elimination Act of 2003

81. Plaintiff repeats and incorporates the claims and facts stated on his prior counts as if set forth herein at length.

82. Defendants failure to properly investigate and prosecute sexual harassment reported by the Plaintiff is a violation of the PREA Act.

83. Defendants denied Plaintiff the security safeguard enacted by the Federal Prison Rape Elimination Act of 2003 that also protects a prisoner that is being sexually harassed and threatened by gang members who want to assassinate his character by falsely telling all other inmates and prison staff that Plaintiff is a sex offender or a pedophile. So this Act covers sexual harassment and threats which is what Plaintiff reported on 1/4/23.

84. On 12/18/23 Defendants wrongly stated Plaintiff's report as being an abuse report, and not a sexual harassment report, and by doing so they created a false excuse to dismiss his report. Plaintiff was provided a form entitled "NJDOC PREA Sexual

Case 3:24-cv-08290-ZNQ-JTQ    Document 28-5    Filed 04/30/26    Page 17 of 18 PageID:
Case 3:24-cv-08290-ZNQ-JTQ    Document 1 *SEALED*    Filed 08/05/24    Page 16 of 17
PageID: 16

Abuse Investigation Disposition Report. Which stated that his claim was unsubstantiated.

85. As a separate violation of the PREA Act Defendants filed a false PREA report on 8/4/22 when Sgt. Smith went to see Plaintiff in the infirmary and told him that the Administrator wanted Plaintiff to fillout and sign a PREA Form. Plaintiff refused and Sgt. Smith filled out the form himself and submitted. Later when Plaintiff was in Unit 3EE a supervisor kept stopping at his cell door asking him to sign a PREA Form. Plaintiff refused every time.

86. Plaintiff had to report these incidents to SID and explain that Sgt. Smith submitted a PREA Form in his name without his signature when Plaintiff was in the infirmary recovering from injuries of an assault.
This is a gross violation of Plaintiff's rights by a supervisor submitting a false PREA report in the name of a prisoner and with the urging of an administrator of the prison.

## RELIEF REQUESTED

87. Plaintiff seeks compensatory damages in the amount of $100.000 (One hundred Thousand Dollars U.S. Currency.)

88. Plaintiff seeks punitive damages in the amount of $100.000 (One hundred Thousand Dollars U.S. Currency.)

89. Plaintiff seeks an award of cost and attorney fees pursuant to 42 U.S.C. 1988.

## X. JURY DEMAND

90. Pursuant to Federal Rule of Civil Procedure 38(c), Plaintiff herewith demands a trial by jury on all issues herein. Plaintiff demands a trial on all issues raised in the above 5 causes of action of this complaint and on any opposing defenses to each and every answer to Plaintiff's complaint.

## XI. VERIFICATION

91. I have read all the allegations of the complaint and they are based on my personal knowledge and facts found in official documents, inquiries, grievances made to prison officials and NJDOC Ombudsman officials. The allegations made in my Civil Rights Complaint are true and correct.

## XII. NOTICE PURSUANT TO RULES 12(a), 14(a), 15, 33(a) and 34(a).

92. Please take notice that the undersigned Plaintiff, Pro se, does hereby demand pursuant to the above cited Rules of the Court, that each party herein serving pleadings and interrogatories and receiving answers thereto, serve copies of all such pleadings and any evidenciary materials referred to in their pleading, to served copies upon the undersigned Plaintiff.

Page 16 of 17

Case 3:24-cv-08290-ZNQ-JTQ   Document 28-5   Filed 04/30/26   Page 18 of 18 PageID:
Case 3:24-cv-08290-ZNQ-JTQ   Document 1 *SEALED*   Filed 08/05/24   Page 17 of 17
PageID: 17

93. Please Take Further Notice that this is a **CONTINUING DEMAND...**

## XIII. RESERVATION OF RIGHTS

94. Plaintiff reserves the right at or before trial to move for summary judgment, and/or the Plaintiff is entitled to judgment as a matter of Law, based on any or all of the above Claims.

## VX. DESIGNATION OF TRIAL COUNSEL

95. Pursuant to the Provisions of Rule 4, the Court is advised that Plaintiff, hereby will be the designated trial counsel, Pro se, in the event that Plaintiff's Motion for Appointment of Counsel is not accepted.

Signed and Verified By _John Arias_

4C. JOHN ARIAS, Plaintiff, Pro Se.
SBI¢ 758754B - ¢24431¢
New Jersey State Prison
P.J. BOX 361
Trenton, New Jersey 09625

Dated: July 23, 2022

Page 17 of 17